IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LARRY EDWIN PATTERSON,**

    Plaintiff,

v.                                                                      Civil Action No. **3:24CV186**

**GLENN YOUNGKIN,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Larry Edwin Patterson, a Virginia inmate, has submitted this 42 U.S.C. § 1983 complaint. (ECF No. 1.) Patterson has been denied discretionary parole at least twenty-three times, (*id.* at 12), and has brought many challenges to that fact throughout the years. Once again, the main focus of Patterson's Complaint is that the Virginia Parole Board ("VPB") violated his rights by refusing to release him on discretionary parole. The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Patterson's claims and the action will be dismissed as frivolous and for failure to state a claim for relief.

### I.     PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable," *id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d

761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.  PATTERSON'S ALLEGATIONS AND CLAIMS

Patterson was "convicted of [a] violent offense[] that occurred prior to January 1995, and [is] eligible for parole under Virginia law.[1]" *Patterson v. Kaine*, No. 3:08CV490, 2010 WL 883807, at *2 (E.D. Va. Mar. 11, 2010). "The [VPB] has repeatedly determined that [Patterson was] not suitable for parole because of, inter alia, the serious nature and circumstances of [his] crimes." *Id.* (citation omitted); (*see* ECF No. 1, at 12.)[2]  Patterson names as Defendants: Glenn Youngkin, the Governor of Virginia; Terrence C. Coles, the Secretary of Public Safety and Homeland Security; Patricia West, the Chairperson of the VPB; and Known and Unknown Persons who are "Virginia Officials/Agents." (ECF No. 1, at 1–2.) In his Complaint, Patterson complains about his good conduct credit and its application to his parole release, contends that he was improperly denied discretionary parole based on several constitutional theories, and suggests that

---

[1] "Larry Patterson was convicted in 1992 of an unspecified violent offense and sentenced to a sixty-five year term of imprisonment." *Patterson*, 2010 WL 883807, at *2 n.1.

[2] The Court employs the pagination assigned to the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Patterson's Complaint.

slow mail delivery violates his rights. (*Id.* at 9–11.) Specifically, Patterson's stated claims are as follows:

> Claim One: Defendants have "[v]iolate[d] [Patterson's Fourteenth Amendment] substantive due process . . . when [they] deliberately prevented [Patterson] of 'benefit' from approximately 21.5 years of earned & worked for good-time credits." (*Id.* at 9–10.) "Eighth Amendment violation and Fourteenth Amendment violation . . . ." (*Id.* at 10.)
>
> Claim Two: Defendants have "[v]iolate[d Patterson's First Amendment] right of freedom of speech in petitioning the government for redress of grievances/court-litigation(s)" because they are "retaliating against [Patterson], due to an 'unofficial classification' in Plaintiff's prison/parole file, marking [Patterson] a 'jail house' lawyer. . . . Part of the implemented retaliation is/was to deprive [Patterson] of any opportunity to win release on parole. First and Eighth Amendment violation . . . ." (*Id.* at 10.)
>
> Claim Three: Defendants have "[v]iolate[d] [Patterson's] right to have parole decision(s) free from arbitrary/capricious/disparitious/'unofficial-policy(s)'/pre-disposed findings. . . . While [Patterson] has no constitutional right to be granted parole, [Patterson] has an absolute constitutional right to [(a)] substantive due process, fundamental fairness and ([b]) equal protection of the law, even with state parole reviews/decisions." (*Id.* at 10–11.) "Plaintiff's Eighth and Fourteenth Amendment entitlements . . . have been violated." (*Id.* at 11.)
>
> Claim Four: Defendants have "[v]iolate[d] [Patterson's] right under due process, through 'differential treatment' of 'legal mail' delivery" causing "a protraction in normal U.S. mail delivery, extra 5 - 15 days in receiving Court "Legal-Mail." (*Id.* at 11.) This delay "is only implemented to deter/inconvenience [Patterson's] 'meaningful access to the Courts'" which is a "Fourteenth Amendment violation." (*Id.*)

Patterson next sets forth the "FACTS OF THE COMPLAINT" as follows:

> At all times relevant to this case, Plaintiff . . . was housed within the Virginia Department of Corrections, serving a parole release eligible prison term since 1992. . . . Plaintiff has served 32+ years, approximately 88%+ of his current prison term (as calculated by VA DOC Court & Legal [2023]).
> On January 11, 2024, Plaintiff was denied a parole grant for the 23+ time. Once again, Defendants base denial of parole on 'unchangeable' reason(s). Namely for
>
> 1/11/2024 NOT GRANT parole: i./ Serious nature and circumstances of your

4

offense(s); ii./ The Board concludes that you should serve more of your sentence prior to release on parole; iii./ Release at this time would diminish the seriousness of your crime.

Defendants and/or their agents lack "some evidence" to support/prove future dangerousness of Plaintiff. In fact, ALL relevant factors, including current correctional staff reports, and annual psychological COMPASS testing, support that Plaintiff has been and is still 'suitable' for parole release.

2009 - to date yearly VA DOC psychological COMPASS testing results for Plaintiff's case/profile are: LOW risk of recidivism & LOW risk of violent recidivism.

Ironically, Defendants sanction parole grants [see EXHIBIT #B] to an abundant amount of Virginia parole eligible prisoners with far worse profiles than that of Plaintiff [see EXHIBIT #B]. Worse profiles being a full of partial combination of: worse criminal histories (current offenses & recidivism) - worse prison records - psychological findings of HIGH risk and some MEDIUM risk - far less percentage of prison term served - 4 to 7 parole release violations - etc.

Example, parole granted for a white male, who was/is an 'AB' serving life+ prison term, following him raping two (2) fellow prisoners, while awaiting the granting of parole in Virginia. Defendants have turned a blind-eye to the apparent dangerousness of many prisoners, who have been granted parole release during the time frame, August 16, 2000 - to date, that Plaintiff has remained eligible for a parole grant. Defendants' actions/inactions amount to purposeful discrimination in violating Plaintiff's entitlements to substantive Due Process.

Defendants and/or their agents admit to being pre-disposed to deny Plaintiff any opportunity to win parole release. Plaintiff was first advised of this fact in 1991, and the last time was by the Virginia Parole Board's Executive Secretary in 2017. Reasoning for Defendants being opposed to granting Plaintiff parole, is due primarily to a classification as an 'unofficial policy(s)' of Plaintiff's label as a "Jailhouse Lawyer," and the guise of convictions of violent offense(s).

Plaintiff as a "Jailhouse Lawyer" has implemented both successful grievances and court litigation against his government, such as: i./ filing VA prison grievances (VA DOC OP #866.1), a few grievances were successfully FOUNDED grievances by Defendants' agents; ii./ filing multiples litigation actions into Virginia state & federal courts . . . .

Defendants seek to deter Plaintiff from exercising a constitutionally protected activity of filing grievances/court-litigating, by targeting Plaintiff for invidious-purposeful discrimination by the very actions/inactions to withhold Plaintiff a parole grant [see EXHIBIT #B & #C]. Plaintiff has been deterred from filing(s).

Defendants and/or their agents/employees, have refused to permit Plaintiff to benefit from approximately 21.5 years of earned & worked for good-time credits. . . .

Under Va. Code Ann. §§ 53.1-199 & 53.1-201(1), Plaintiff was mandated to surrender one-half of all of his earned & worked for good-time credits, to reduce the period of time he will have to serve in prison before becoming parole eligible.

5

> The legislative intent of the state statute requiring one-half was/is for Plaintiff to be granted early parole. Early parole period for Plaintiff, according to Defendants' Uniform Commitment Report 9/27/1993, was sometime between August 16, 2000 - 2004. Defendants have/are obviously withholding a parole grant for Plaintiff who by § 53.1-201(1) is classified statutorily as an "Exemplary" state prisoner.
>
> Defendants implemented an official policy on July 1, 2022, that requires ALL correspondence from Courts and other Court entities, corresponding with VA DOC prisoners, to forward Court U.S. Mail deliveries to "VA DOC CENTRALIZED MAIL DISTRIBUTION CENTER." This intentionally protracts U.S. Mail deliveries to Plaintiff form 5 - 15 days.
>
> Plaintiff's Due Process rights are abridged by this onus process, in having time-sensitive Court Orders/Instructions/Show Cause(s) unduly delayed in acknowledgment by movant/recipient Plaintiff. Due to his conditions of confinement, Plaintiff should be free from additional burdens beyond those for which he creates himself while in prison.
>
> Plaintiff is entitled to the very same process (Due Process) of timely U.S. mail delivery, especially Court correspondences, as any citizen in Virginia. This process implemented by Defendants and/or their agents, is designed to simply delay justice and in some instances deny justice for Plaintiff through no fault of his own.

(ECF No. 1, at 12–14 (paragraph numbers omitted, alterations in original).) Patterson seeks declaratory and injunctive relief and monetary damages. (*Id.* at 24–25.)

### III.  DUE PROCESS CLAIMS

#### A.  Parole Related Claim (Claims One and Three (a))

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). Where government action affects a protected liberty interest, the second step is to determine "what process is due" under the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (observing that "due process is flexible[,] . . . not all situations calling for procedural safeguards call for the same kind of procedure").

A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "With no constitutional right to parole *per se*, federal courts recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (quoting *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991)).

"Contrary to [Patterson's] view . . . , 'the pertinent [Virginia] statutes, far from creating a presumption that release will be granted [if he meets certain criteria], absolutely prohibits parole unless the Parole Board decides otherwise.'" *Burnette v. Fahey*, No. 3:10CV70, 2010 WL 4279403, at *8 (E.D. Va. Oct. 25, 2010) (second alteration in original) (quoting *James v. Robinson*, 863 F. Supp. 275, 277 (E.D. Va.), *aff'd*, No. 94–7136, 1994 WL 709646 (4th Cir. Dec. 22, 1994)). The United States Court of Appeals for the Fourth Circuit consistently has found the pertinent Virginia statutes governing release on discretionary parole fail to create a protected liberty interest in *release* on parole. *See Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012) (citing *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991); *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996)). Virginia, however, has created a limited liberty interest in consideration for parole. *Burnette*, 2010 WL 4279403, at *8; *Burnette*, 687 F.3d at 181. "The question thus becomes what procedures are required under the Due Process Clause in [considering] an inmate for discretionary release on parole." *Burnette*, 2010 WL 4279403, at *8 (alteration in original) (quoting *Neal*, 2008 WL 728892, at *2).

The Fourth Circuit has stated that the Constitution requires only a very limited amount of process in considering an inmate for parole. Specifically, "[a]t most, . . . parole authorities must furnish to the prisoner a statement of its reasons for denial of parole." *Burnette*, 687 F.3d at 181 (alteration and omission in original) (citation omitted) (internal quotation marks omitted). "So long as the statement provides a valid ground for denying parole, the federal courts cannot, under the guise of due process, demand more from the state." *Burnette*, 2010 WL 4279403, at *8 (citation omitted).

Here, according to Patterson, the VPB provided Patterson with a statement of its reasons for denying him parole. Specifically, Patterson contends that the VPB declined to release him on parole because the: "i./ Serious nature and circumstances of your offense(s); ii./ The Board concludes that you should serve more of your sentence prior to release on parole; iii./ Release at this time would diminish the seriousness of your crime." (ECF No. 1, at 12.) The Fourth Circuit has "concluded that that the parole board gave constitutionally sufficient reasons when it informed the prisoner that he was denied parole release because of 'the seriousness of [his] crime' and his 'pattern of criminal conduct.'" *Burnette*, 2010 WL 4279403, at *8 (alteration in original) (quoting *Bloodgood v. Garraghty*, 783 F.2d 470, 472, 474–75 (4th Cir. 1986)). The VPB provided Patterson with at least three valid grounds for its decision. *See Bloodgood*, 783 F.2d at 475 (explaining that the "denial rested on two valid reasons, and we see no reason to disturb the administrative judgments"). While Patterson believes that his continued parole denial is fundamentally unfair, he lacks a liberty interest in being released on parole. As the Court has explained to Patterson previously, *see Patterson*, 2010 WL 883807, *4–5, he has received all of

8

the process the Constitution requires. Accordingly, Claim Three (a) will be DISMISSED as legally frivolous and for failure to state a claim for relief.[3]

In Claim One, Patterson contends that Defendants have Defendants have "[v]iolate[d Patterson's Fourteenth Amendment] substantive due process . . . when [they] deliberately prevented [Patterson] of 'benefit' from approximately 21.5 years of earned & worked for good-time credits." (ECF No. 1, at 9–10.) "Eighth Amendment violation and Fourteenth Amendment violation . . . ." (*Id.* at 10.) At first glance, this claim is hard to follow, but it lacks apparent merit. Patterson argues that,

> [u]nder Va. Code Ann. §§ 53.1-199 & 53.1-201, Plaintiff has an approximately 43 years of earned & worked for good-time credits. §53.1-199 provides that 'one half' of Plaintiff's earned & worked for good-time credits will be used to 'reduce the period' served before becoming eligible for parole. The other half, as § 53.1-201 provides, reduces the period of the sentence towards mandatory release.

(*Id.* at 15.) Patterson seemingly argues that even though he earns good-time credit at the highest level, Defendants have made these credits meaningless by not releasing him on parole.

Virginia Code Ann. § 53.1-199 provides that an inmate

> may be entitled to good conduct allowance not to exceed the amount set forth in § 53.1-201. Such good conduct allowance shall be applied to reduce the person's maximum term of confinement while he is confined in any state correctional facility. One half of the credit allowed under the provisions of § 53.1-201 shall be applied to reduce the period of time a person shall serve before being *eligible* for parole.

*Id.* (emphasis added). From the plain meaning of the statute, while good-time credit may reduce the term of confinement for an inmate, Virginia law clearly requires that good-time credit earned

---

[3] To the extent that Patterson argues in Claims One, Two, and Three that the denial of parole violates the Eighth Amendment, "[w]hen a parole grants are not mandatory, but rather committed to the discretion of the parole agency, denial of parole does not constitute cruel and unusual punishment." *Patterson*, 2010 WL 883807, *6 (citations omitted). Any Eighth Amendment claim lacks merit and is summarily dismissed.

by an inmate quickens only his parole *eligibility* date, not his parole release date. *Cf. Bowling v. Johnson*, No. 7:09-cv-00085, 2009 WL 1437845, at *3 (W.D. Va. May 21, 2009). Patterson's argument that the amount of good-time credit should entitle him to an earlier release on parole therefore lacks merit. Claim One will be DISMISSED for failure to state a claim and as frivolous.

### B. Delay in Mail (Claim Four)

In Claim Four, Patterson takes issue with the Virginia Department of Corrections's decision to have all mail routed to a centralized mail center and claims that this violates his due process right to access the courts. In order to plead a claim that he was denied access to the courts, a plaintiff must identify with specificity a non-frivolous legal claim that the defendants' actions prevented him from litigating. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996). This requires the "inmate [to] come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions." *Harrell v. Fields*, No. 3:07CV263, 2008 WL 110473, at *2 (E.D. Va. Jan. 8, 2008) (quoting *Godfrey v. Washington Cnty., Va., Sheriff*, No. 7:06-cv-00187, 2007 WL 2405728, at *13 (W.D. Va. Aug. 17, 2007)).

Patterson's allegations are nothing more than vague and conclusory allegations of inconvenience and delay. At most, Patterson complains that it takes five to fifteen days longer to receive his legal mail. Patterson has not identified any nonfrivolous legal claim that Defendants' mail policy has prevented him from litigating. *See Christopher*, 536 U.S. at 415. Patterson's allegations are nothing more than vague and conclusory allegations of inconvenience and delay and are insufficient to state a claim of denial of access to the courts. *See Taylor v. Manis*, No. 7:20–cv–00121, 2021 WL 519903, at *4 (W.D. Va. Feb. 11, 2021) (explaining that a "lack of specificity

10

as to any resulting harm [to ongoing litigation in a specifically identified case] renders his claims subject to dismissal"), *aff'd* 2022 WL 4534270 (4th Cir. 2022).

Because Patterson fails to allege facts that would plausibly suggest that Defendants violated his constitutional rights, Claim Four is DISMISSED for failure to state a claim and as frivolous.[4]

### IV.  EQUAL PROTECTION

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Douglas must allege that (1) he and a comparator inmate were treated differently and were similarly situated; and (2) the different treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). Patterson fails to satisfy this threshold requirement for an equal protection claim. At most, Patterson vaguely identifies a person who had a life sentence who he contends committed crimes while incarcerated who was released on parole. Patterson argues that this individual was far less qualified for parole release. Patterson, however, fails to identify how this individual was similarly situated to him beyond the fact that he is an inmate who was released on parole. Thus, Patterson fails to satisfy the initial prong of the test. In sum, Patterson fails to plausibly allege an equal protection claim. Accordingly, Claim Three (b) will be DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

---

[4] The Court notes that in response to the new Virginia Department of Corrections policy, the Court extended all deadlines required of inmates to a twenty or thirty-day response time to accommodate any delay.

11

## V.     FIRST AMENDMENT

In Claim Two, Patterson contends that Defendants have "[v]iolate[d] [Patterson's First Amendment] right of freedom of speech in petitioning the government for redress of grievances/court-litigation" because they are "retaliating against [Patterson], due to an 'unofficial classification in Plaintiff's prison/parole file, marking [Patterson] a 'jail house' lawyer. . . . Part of the implemented retaliation is/was to deprive [Patterson] of any opportunity to win release on parole. First and Eighth Amendment violation . . . ." (ECF No. 1, at 10.)

### A.     No Personal Involvement of Defendants Youngkin, Coles, and Known Unknown Persons

As a preliminary matter, Patterson fails to allege facts indicating that Defendants Youngkin, Coles, and Known and Unknown Persons were personally involved with the deprivation of his First Amendment rights. In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

12

At most, Patterson contends that Virginia law "provides that both Defendant Glenn Youngkin (Governor of Virginia) and Defendant Terrance C. Coles (Secretary of Public Safety & Homeland Security-VA) are committed under state law(s) to always having direct or indirect knowledge of actions/inactions of all policies/unofficial-policies/procedures/regulations implemented and carried out by ALL state agencies." (ECF No. 1, at 21.) Patterson contends that Defendants Youngkin and Coles "are also more than fully aware" that other individuals have been granted parole. (*Id.*) Patterson contends that he and his family have contacted Defendants Youngkin, Coles, and unidentified "Known Persons" about the fact that he finds it unfair that he has been denied parole. (*Id.*) Patterson, however, fails to allege facts that would plausibly suggest that Defendants Youngkin, Coles, and Known and Unknown Persons were personally involved in retaliating against him for filing grievances and lawsuits by denying him discretionary parole. Accordingly, Patterson fails to state a First Amendment retaliation claim against Defendants Youngkin, Coles, and Known and Unknown Persons. Claim Two will be DISMISSED with respect to Defendants Youngkin, Coles, and Known and Unknown Persons.

**B.  Defendant West**

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted). "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." *Adams*, 40 F.3d at 74. Instead, a plaintiff must allege facts that plausibly show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.* at 75. "While there

13

is no constitutional right to parole, an action, such as a parole denial, that ordinarily would not violate the First Amendment may run afoul of the Constitution if done for a retaliatory purpose." *Nyberg v. Davidson*, 776 F. App'x 578, 581 (11th Cir. 2019) (citations omitted). Accordingly, a parole board member "may not lawfully vote to deny parole in order to retaliate against [Patterson] exercising his First Amendment rights." *Id.*

To state a claim of First Amendment retaliation, Patterson must allege facts indicating "that (1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct.'" *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted).

Patterson contends that, unofficially, he was denied parole because he exercised his First Amendment right to file institutional grievances and various lawsuits. Patterson contends that this is evident because individuals with worse records have been granted parole, and he has not. (ECF No. 1, at 16–17.) As to the first factor, the Fourth Circuit has held that inmates engage in protected First Amendment activity when they write grievances and file lawsuits. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544–46 (4th Cir. 2017). With respect to the second factor, "a plaintiff suffers adverse action" for the purposes of a First Amendment retaliation claim "if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500 (citations omitted). Denying Patterson parole may constitute an adverse action that would deter an inmate of ordinary firmness from engaging in the protected First Amendment conduct, thus, for the purposes of screening, Patterson has satisfied this second factor. *See Nyberg*, 776 F. App'x at 582 (citing *Watison v. Carter*, 668

F.3d 1108, 1115 (9th Cir. 2012); *Rauser v. Horn*, 241 F.3d 330, 334 (3rd Cir. 2001)). With respect to the third factor—the causal connection— this aspect is murkier.

A plaintiff must allege facts sufficient to show a causal connection between the First Amendment activity and the alleged adverse action. *Constantine*, 411 F.3d at 501. Recently, the Fourth Circuit has explained that courts should apply the "burden-shifting framework of the same-decision test." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (citation omitted). "That test allocates a prima facie burden to the plaintiff to [allege] that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Id.* (citation omitted). "In order to establish this causal connection, a plaintiff in a retaliation case must [allege], at the very least, that the defendant was aware of [his] engaging in protected activity." *Constantine*, 411 F.3d at 501. However, "[k]nowledge alone . . . 'does not establish a causal connection' between the protected activity and the adverse action." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). There must also be circumstantial evidence, such as evidence that the retaliation took place within some "temporal proximity" of the protected activity, or direct evidence of a retaliatory motive. *Id.*; *see Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010).

It is evident from Patterson's submissions that he was denied parole primarily due to the stated reasons of the seriousness nature of his offense and because his release at that time would diminish the seriousness of his crimes. It also apparent that the Parole Board may deny Patterson parole for a variety of reasons including his conduct while incarcerated. Patterson suggests that the "[r]easoning for Defendants being opposed to granting Plaintiff parole, is due primarily to a classification as an 'unofficial policy(s)' of Plaintiff's label as a 'Jailhouse Lawyer,' and the guise of convictions of violent offense(s)." (ECF No. 1, at 13.) Patterson contends that he first learned this in 1991, and then again was "advised of this fact . . . by the Virginia Parole Board's Executive

15

Secretary in 2017." (*Id.*) From the record before the Court, Patterson has alleged facts that suggest that Defendant West, as the Chairperson of the VPB, may have considered Patterson's filing of various grievances and lawsuits in the decision to deny him parole. While it is unclear whether Patterson's engagement in "[t]his protected activity was 'a substantial or motivating factor' in the [Defendant West's] action," *Shaw*, 59 F.4th at 130 (citation omitted), Patterson has suggested that the denial of parole was "due primarily to [his] classification . . . as a 'Jailhouse Lawyer'," (ECF No. 13, at 1). Accordingly, for the purposes of the Court's screening obligations under 28 U.S.C. § 1915(e)(2), Patterson has plausibly alleged that Defendant West retaliated against him for exercising his First Amendment rights by denying him parole.

## VI. CONCLUSION

Claims One, Three, and Four will be DISMISSED for failure to state a claim for relief and as frivolous. Claim Two against Defendants Youngkin, Coles, and Known and Unknown Persons will be DISMISSED for failure to state a claim. Claim Two against Defendant West remains. The Court will continue to process the action with respect to Claim Two against Defendant West.

An appropriate Order shall issue.

Date: 2 October 2024
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge