IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LARRY EDWIN PATTERSON,**

    Plaintiff,

v.                                                          Civil Action No. **3:24CV186**

**GLENN YOUNGKIN,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on a motion for summary judgment filed by the sole remaining defendant, Patricia West, the Chairperson of the Virginia Parole Board. (ECF No. 56). Larry Edwin Patterson, a Virginia inmate, sued West under 42 U.S.C. § 1983. (ECF No. 1.) Patterson has been denied discretionary parole at least twenty-three times, (*id.* at 12), and has brought many challenges to that fact throughout the years. The Court provided Patterson with notice of West's motion for summary judgment pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (ECF No. 58), and Patterson filed a response. (ECF No. 59.) For the reasons discussed below, the defendant's motion for summary judgment, (ECF No. 56), will be GRANTED.

    **I.**     **PROCEDURAL HISTORY AND REMAINING CLAIM**

    **A.**     **The Complaint and the Court's Screening Obligations**

Patterson was "convicted of [a] violent offense[] that occurred prior to January 1995, and [is] eligible for parole under Virginia law."[1] *Patterson v. Kaine*, No. 3:08CV490, 2010 WL 883807, at *2 (E.D. Va. Mar. 11, 2010). "The [VPB] has repeatedly determined that [Patterson

---

[1] "Larry Patterson was convicted in 1992 of an unspecified violent offense and sentenced to a sixty-five year term of imprisonment." *Patterson*, 2010 WL 883807, at *2 n.1.

was] not suitable for parole because of, inter alia, the serious nature and circumstances of [his] crimes." *Id.* (citation omitted); (*see* ECF No. 1, at 12.) [2] In his complaint, Patterson named as defendants: Glenn Youngkin, the Governor of Virginia; Terrence C. Coles, the Secretary of Public Safety and Homeland Security; Patricia West, the Chairperson of the VPB; and Known and Unknown Persons who are "Virginia Officials/Agents." (ECF No. 1, at 1–2.) Patterson complained about his good conduct credit and its application to his parole release, contended that he was improperly denied discretionary parole based on several constitutional theories, and suggested that slow mail delivery violated his rights. (*Id.* at 9–11.) Specifically, Patterson's stated claims were as follows:

> Claim One: Defendants have "[v]iolate[d] [Patterson's Fourteenth Amendment] substantive due process . . . when [they] deliberately prevented [Patterson] of 'benefit' from approximately 21.5 years of earned & worked for good-time credits." (*Id.* at 9–10.) "Eighth Amendment violation and Fourteenth Amendment violation . . . ." (*Id.* at 10.)
>
> Claim Two: Defendants have "[v]iolate[d Patterson's First Amendment] right of freedom of speech in petitioning the government for redress of grievances/court-litigation(s)" because they are "retaliating against [Patterson], due to an 'unofficial classification' in Plaintiff's prison/parole file, marking [Patterson] a 'jail house' lawyer. . . . Part of the implemented retaliation is/was to deprive [Patterson] of any opportunity to win release on parole. First and Eighth Amendment violation . . . ." (*Id.* at 10.)
>
> Claim Three: Defendants have "[v]iolate[d] [Patterson's] right to have parole decision(s) free from arbitrary/capricious/disparitious/'unofficial-policy(s)'/pre-disposed findings. . . . While [Patterson] has no constitutional right to be granted parole, [Patterson] has an absolute constitutional right to [(a)] substantive due process, fundamental fairness and ([b]) equal protection of the law, even with state parole reviews/decisions." (*Id.* at 10–11.) "Plaintiff's Eighth and Fourteenth Amendment entitlements . . . have been violated." (*Id.* at 11.)
>
> Claim Four: Defendants have "[v]iolate[d] [Patterson's] right under due process, through 'differential treatment' of 'legal mail' delivery" causing "a

---

[2] The Court employs the pagination assigned to the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Patterson's complaint.

>protraction in normal U.S. mail delivery, extra 5 - 15 days in receiving Court "Legal-Mail." (*Id.* at 11.) This delay "is only implemented to deter/inconvenience [Patterson's] 'meaningful access to the Courts'" which is a "Fourteenth Amendment violation." (*Id.*)

Patterson seeks declaratory and injunctive relief and monetary damages. (*Id.* at 24–25.)

By Memorandum Opinion and Order entered on October 2, 2024, the Court dismissed Claims One, Three, and Four for failure to state a claim for relief and as frivolous. (ECF No. 11, at 16.) The Court dismissed Claim Two against defendants Youngkin, Coles, and Known and Unknown Persons for failure to state a claim. (*Id.*) The Court explained that only Claim Two against West survived the Court's screening obligations under 28 U.S.C. § 1915(e)(2). (*Id.*)[3]

### B. Discovery Period

On December 18, 2024, West filed a motion for summary judgment. (ECF No. 22.) For the next five months Patterson attempted to engage in discovery and sought the Court's involvement. However, Patterson's various requests and motions failed to comply with the Local Rules and Patterson failed to seek discovery on an informal basis prior to involving the Court. (*See* ECF No. 33.) By Memorandum Order entered on May 1, 2025, the Court denied Patterson's motion to compel, but found that under Federal Rule of Civil Procedure 56(d), "summary judgment [was] premature, because Patterson ha[d] adequately alleged that more discovery is necessary to respond to Defendant West's Motion for Summary Judgment." (ECF No. 44, at 5.) The Court denied the motion for summary judgment without prejudice to allow Patterson more time for discovery. (*Id.* at 5.) The Court specifically warned Patterson of the parameters of the discovery he could seek. (*Id.* at 5–6.)

---

[3] The Court dismissed any Eighth Amendment portion of Claim Two. (ECF No. 11, at 9 n.3.)

3

Despite the Court's warning, Patterson continued to file discovery motions with the Court that failed to comply with the Local Rules, misrepresented that West had failed to respond to his discovery requests when she had done so, and sought to have either the Court or West pay for his discovery. (ECF No. 52, at 3–4.) The discovery period closed on July 30, 2025, (*see* ECF No. 45, at 2), and West filed her motion for summary judgment on August 6, 2025.

### C.    Allegations in Support of Remaining Claim

In support of his remaining claim that West retaliated against him for filing grievances and because of his label as a jailhouse lawyer, Patterson alleges as follows:

> Defendants and/or their agents admit to being pre-disposed to deny Plaintiff any opportunity to win parole release. Plaintiff was first advised of this fact in 1991, and the last time was by the Virginia Parole Board's Executive Secretary in 2017. Reasoning for Defendants being opposed to granting Plaintiff parole, is due primarily to a classification as an 'unofficial policy(s)' of Plaintiff's label as a "Jailhouse Lawyer," and the guise of convictions of violent offense(s).
> Plaintiff as a "Jailhouse Lawyer" has implemented both successful grievances and court litigation against his government, such as: i./ filing VA prison grievances (VA DOC OP #866.1), a few grievances were successfully FOUNDED grievances by Defendants' agents; ii./ filing multiples litigation actions into Virginia state & federal courts . . . .
> Defendants seek to deter Plaintiff from exercising a constitutionally protected activity of filing grievances/court-litigating, by targeting Plaintiff for invidious-purposeful discrimination by the very actions/inactions to withhold Plaintiff a parole grant [see EXHIBIT #B & #C]. Plaintiff has been deterred from filing(s).

(ECF No. 1, at 13.)

## II.    STANDARD FOR SUMMARY JUDGMENT

In addition to the standards for summary judgment identified above for the moving party, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). When the motion is properly supported, the nonmoving party

must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere scintilla of evidence, however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials.").

In support of her motion for summary judgment, West submits: (1) her own affidavit, (ECF No. 57-1, at 1–10);[4] (2) various criminal records, parole decisions, and related documents, (ECF No. 57-1, at 11–122); (3) Patterson's 2023 Parole Examiner's Investigation Report, (ECF No. 57-2); and, (4) Patterson's 2024 Parole Examiner's Investigative Report, (ECF No. 57-3).

At this stage, the Court is tasked with assessing whether Patterson "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general

---

[4] The Court cites to West's affidavit by the paragraph number.

rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. In the middle of his response, Patterson included his own declaration (ECF No. 59, at 2–7) that the Court considers here to the extent that it contains admissible evidence.[5]

In light of the foregoing submissions and principles, the following facts are established for the motion for summary judgment. All permissible inferences are drawn in favor of Patterson.

### III. UNDISPUTED FACTS

#### A. Patterson's Criminal History, Parole, and Parole Revocations

---

[5] The facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Summary judgment affidavits must also "set out facts that would be admissible in evidence." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *see also Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). Patterson's declaration is comprised of argument, and includes information that has no bearing on the remaining claim. Patterson also makes statements that are based on hearsay; are conclusory, speculative, and immaterial; and are of no value in assessing the propriety of summary judgment. For example, Patterson cites things he was allegedly told in 1990, 2015, 2017, 2022 and concludes that these are reasons he was denied parole. (ECF No. 59, at 3–4.) These statements are inadmissible hearsay. Patterson also states that "[i]t is widely known throughout states that both Corrections Departments and Parole Boards garner 'unofficial policies' and/or 'official policies' to retaliate, hinder, and burden state prisoners." (ECF No. 59, at 6.) This statement is both speculative and conclusory.

Patterson's complaint also does not amount to admissible evidence. The complaint has the following: "VERIFICATION: I have read the foregoing complaint and hereby verify that the matters asserted herein/therein are true, except as to matters alleged on information and belief, and, as to those, I the Plaintiff, believe them to be true. I certify under penalty of perjury that the foregoing is true and correct." (ECF No. 1, at 25–26.) Patterson's "verification" is virtually identical to one that this Court previously rejected in *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, *2–3 (E.D. Va. June 1, 2011), and is substantially similar to one that the United States Court of Appeals for the Fourth Circuit found to be lacking in *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001). As such, the Court must consider the contents of Patterson's complaint as "mere pleading allegations." *Hogge*, 2011 WL 2161100, at *3 (quoting *Walker*, 11 F. App'x at 274). Consequently, the complaint fails to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

6

Patricia West is the Chair of the Virginia Parole Board ("Parole Board" or "VPB") and began serving in that role on September 15, 2023. (ECF No. 57-1 ¶ 1.) Thus, West was only serving in the capacity of Chairman during Patterson's 2023 and 2024 discretionary parole reviews. Virginia Department of Corrections ("VDOC") records indicate that Patterson was received into the VDOC on December 9, 1981, and is serving a total sentence of 89 years and six months for various crimes. (*Id.* ¶ 4.)

In 1980, Patterson was convicted of offenses including, sexual assault, rape, and abduction. (*Id.* ¶ 6.) Patterson was released on discretionary parole on December 2, 1986. (*Id.* ¶ 13.) Patterson violated his parole, and the Parole Board revoked his parole on July 31, 1987, after he was convicted of the crime of unauthorized use of an automobile. (*Id.*) Patterson was returned to the VDOC on August 14, 1987, to serve the remainder of his sentence. (*Id.*)

On October 18, 1990, the Parole Board again granted Patterson discretionary parole, and he was released from the VDOC. (*Id.* ¶ 14.) On April 28, 1992, the Richmond Circuit Court sentenced Patterson to 40 years for two counts of sodomy, 20 years for sexual assault and rape, and five years with five years suspended for robbery. (*Id.* ¶ 15.) On August 28, 1992, the Parole Board revoked Patterson's 1990 grant of parole due to the new crimes he committed while on parole, and he was returned to the VDOC on June 2, 1993. (*Id.* ¶ 16.)

### B. Discretionary Parole Review Process

In determining whether an inmate should be released on parole, the Parole Board considers many factors including the:

  a) nature of the offender's current offense,
  b) length of the sentence,
  c) the length of time he has served,
  d) criminal history/record,
  e) prior experience under supervision,
  f) risk to community,

7

       g) personal and social behavior,
       h) institutional experience (i.e. program participation and behavior),
       i) change[s] in motivation and behavior,
       j) release plan, and,
       k) community and family resources.

(*Id.* ¶ 20.) Family members, friends, employers, and attorneys, amongst others, may meet with the Parole Board to present information to support parole for an individual while victims and their families may meet with the Parole Board to provide information about why the person should not be released. (*Id.*)

The Parole Board consists of five members, including the chairman. (*Id.* ¶ 21.) A parole examiner conducts an interview with the eligible inmate, and at that time, the inmate may present written and oral statements. (*Id.*) The examiner submits his report to the VDOC online research and information system, "CORIS." (*Id.*) CORIS then sends the report to two Parole Board members chosen at random. (*Id.*) For crimes other than a life sentence for homicide, three board members must vote to grant or not to grant parole. (*Id.* ¶ 22.) If three board members vote not to grant parole, the report is not sent to the remaining two members. (*Id.*)

       **C.    Patterson's Recent Discretionary Parole Reviews**

Patterson was first eligible for discretionary parole consideration on June 18, 2001. (*Id.* ¶ 17.) The Parole Board has reviewed Patterson for discretionary parole since he became eligible for review in 2001. (*Id.* ¶ 23.) The Parole Board determined that he was unsuitable for parole during each review between 2001 and 2024. (*Id.*) Most recently, Patterson was docketed for annual review for discretionary parole and geriatric conditional release on December 19, 2023. (*Id.* ¶ 24.) The Parole Board considered the factors previously identified and the parole examiner's report, which recommended that Patterson not be granted parole due to the horrific nature of his

8

offenses.[6] (*Id.*; *see* ECF No. 57-2, at 3–4.) The Parole Board determined that Patterson was not suitable for release and informed Patterson by letter dated January 11, 2024. (ECF No. 57-1, at 68–69.) The Parole Board explained that the decision was primarily based on the "[s]erious nature and circumstances of [his] offense(s);" because "[t]he Board concludes [he] should serve more of [his] sentence prior to release on parole;" and because, "[r]elease at this time would diminish the seriousness of [the] crime." (*Id.* at 68–69.)

Patterson asked for reconsideration or an appeal of the January 11, 2024, decision to not grant him discretionary parole or geriatric release. (ECF No. 57-1, at 112–13.) On July 2, 2024, West denied the request because Patterson failed to present any significant and new information; because his argument did not affect the reasons he was denied parole; and because he did not show any significant error. (*Id.* at 112.) Patterson asked for reconsideration a second time. (*Id.* at 114–16.) On August 22, 2024, West denied the request again for the same reasons. (*Id.* at 116.)

Patterson was again reviewed for discretionary parole in 2024. (ECF No. 57-1 ¶ 27.) Patterson was interviewed on October 11, 2024, and the parole examiner noted that Patterson claimed that he was a "victim now" of the parole process and that people had been released "with

---

[6] The parole examiner noted:

> A careful review of [Patterson's] file suggests there are actually multiple sexual assault victims. He has been on discretionary parole two times and has been revoked both times. The offense details in the present offense are horrendous: the PSI indicates that the victim was under his forceful actions for about 4.5 hours, during which time he forced her to swallow what appeared to be some sort of drug, was bound, and she was sexually assaulted orally, vaginally, and then with a vibrator. He forced her to sign a letter stating that the sexual acts were consensual and he forced her to write him a check for $180.00. This was a well thought out and pre-meditated sexual assault upon someone he knew . . . .

(ECF No. 57-2, at 3 (alteration in original) (internal quotation marks omitted).) A more detailed description of the criminal acts was included in the 2024 parole examiner's report. (*See* ECF No. 57-3, at 4–5.)

far worse crimes than" him. (ECF No. 57-3, at 2–3.) The parole examiner noted that Patterson "was argumentative and complained during the entire interview," that "his focus was solely on the perceived injustice that he and other inmates supposedly have faced for the past three [3] decades," and that he "did not want to address in any detail what he did to this victim[.]" (*Id.* at 7 (alteration in original).) The examiner stated that in his opinion, "until Patterson's focus, demeanor, and/or presentation at these hearing improves, any well-intended actions in his part will always be overshadowed by the words and tone that he utters." (*Id.* at 7–8.) The examiner also noted that the VDOC had identified Patterson as an escape risk and that Patterson needed psychiatric or psychosexual evaluation before discharge. (*Id.* at 8.) The examiner noted that for the listed reasons and others, he could not recommend Patterson for release. (*Id.*)

On November 20, 2024, the Parole Board voted to not grant Patterson release on discretionary parole or geriatric conditional release. (ECF No. 57-1. at 66–67.)[7] The Parole Board explained that the reasons for not granting parole or release were Patterson's "[e]xtensive criminal record;" his "prior failure[s] and/or convictions while under community supervision indicate that you are unlikely to comply with conditions of release;" his "[h]istory of violence;" his "[p]oor institutional adjustment (for example, motivation/attitude, unfavorable reports, lack of program involvement, etc.); that "[r]elease at this time would diminish the seriousness of [the] crime;" because of the "[c]rimes committed;" and the "[s]erious nature and circumstances of [his] offense(s)." (*Id.*)

West explains:

> Although an inmate may be eligible for discretionary parole consideration, the inmate may not be suitable for parole release. In making the decision of whether to grant parole, the Board is very concerned about public safety. For that reason,

---

[7] West avers that although the Parole Board's letter "only stated that he was not granted geriatric release, the Board's annual review was for consideration of both discretionary parole and geriatric conditional release" and that the factors considered are the same. (ECF No. 57-1 ¶ 27.)

10

> the nature and circumstances of an inmate's crime and criminal history, when considered with all mitigating and aggravating factors may preclude his release on parole. It is true that if the nature and circumstances of an inmate's crimes are considered serious upon his incarceration, they may never be considered less serious. However, there is a possibility that in time, an inmate's conduct and positive adjustment while in prison, when considered with all other factors, will outweigh the concerns the Board has for the offense. Patterson's 1992 convictions consist of two counts of sodomy, rape and robbery against one victim whom he drugged, handcuffed and forced to submit to various sexual acts for more than four hours. These crimes were committed less than 11 months after Patterson was released on parole. His criminal record includes a prior rape sentence imposed in 1980. The Board considers all the facts surrounding Patterson's crimes and his prison adjustment. If the Board does not have sufficient confidence in an inmate's ability to succeed on parole, or if his release on parole would not best serve the interests of society and the inmate, he may not be granted parole.

(ECF No. 57-1 ¶ 28.)

West avers that "[c]ontrary to the claims in the lawsuit, when the Virginia Parole Board reviews an inmate for parole release, grievances and lawsuits filed by the inmate are not considered." (*Id.* ¶ 29.) West explains that the VDOC and the Parole Board are two separate entities. (*Id.* ¶ 30.) The grievances that Patterson filed with the VDOC are not known to the Parole Board and "[t]his is not information considered by the Virginia Parole Board in deciding an inmate's suitability for release." (*Id.*) West also avers that "the Virginia Parole Board does not have a notation in its file that Patterson is a 'jailhouse lawyer,'" that she has "no personal knowledge of his alleged reputation as such," and that "[t]he Virginia Parole Board does not have an unofficial policy to deny Patterson parole." (*Id.* ¶ 31.) West swears that she had not received or given a directive to deny Patterson parole. (*Id.* ¶ 32.)

Patterson will next be reviewed for discretionary parole and conditional geriatric release during the fourth quarter of 2025. (*Id.* ¶ 33.)

### III. ANALYSIS

**A.     First Amendment Retaliation**

11

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted). "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." *Adams*, 40 F.3d at 74. Instead, a plaintiff must show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.* at 75.

For Patterson's claim of retaliation to survive summary judgment, he is "required to produce sufficient evidence 'that (1) [he] engaged in protected First Amendment activity, (2) [the defendants] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and [the defendants'] conduct.'" *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014) (first, third and fourth alteration in original) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)).

As to the first factor, the United States Court of Appeals for the Fourth Circuit has held that inmates engage in protected First Amendment activity when they write grievances and file lawsuits. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544–46 (4th Cir. 2017). With respect to the second factor, the determination as to whether a defendant's actions "adversely affected [the plaintiff's] First Amendment rights," *Constantine*, 411 F.3d at 499 (citation omitted), is a fact-specific inquiry, which takes into account the actors involved and their relationships. *See Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). The Fourth Circuit has explained "adverse effect" as follows:

First Amendment retaliation is actionable because "retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Not all retaliatory conduct tends to chill First Amendment activity, however, *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995), and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a "*de minimis* inconvenience" to her exercise of First Amendment rights, *ACLU of Md.*, 999 F.2d at 786 n.6. Of course, conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, and a plaintiff need not actually be deprived of her First Amendment rights in order to establish First Amendment retaliation. *Id.*

*Constantine*, 411 F.3d at 500. "[A] plaintiff suffers adverse action" for the purposes of a First Amendment retaliation claim "if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *See id.* (citations omitted).

As to the third factor – causation – a plaintiff must produce evidence sufficient to show a causal connection between the First Amendment activity and the alleged adverse action. *See id.* at 501. Recently, the Fourth Circuit has explained that courts should apply the "burden-shifting framework of the same-decision test." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (citation omitted). "That test allocates a prima facie burden to the plaintiff to show that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Id.* (citation omitted). "In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [his or] her engaging in protected activity." *Constantine*, 411 F.3d at 501. However, "[k]nowledge alone . . . 'does not establish a causal connection' between the protected activity and the adverse action." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). There must also be circumstantial evidence, such as evidence that the retaliation took place within some "temporal proximity" of the protected activity, or direct evidence of a retaliatory motive. *Id.*; *see Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010).

13

If a plaintiff makes the showing that his protected conduct was a substantial or motivating factor, "[t]he burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." *Shaw*, 59 F.4th at 130 (citation omitted).

### B. Patterson Fails to Make a Prima Facie Showing of Retaliation

Patterson contends that West has "[v]iolate[d Patterson's First Amendment] right of freedom of speech in petitioning the government for redress of grievances/court-litigation(s)" because she is "retaliating against [Patterson], due to an 'unofficial classification' in Plaintiff's prison/parole file, marking [Patterson] a 'jail house' lawyer." (ECF No. 11, at 10.) Patterson further argues that "[p]art of the implemented retaliation is/was to deprive [Patterson] of any opportunity to win release on parole." (*Id.*) Patterson fails to identify a specific grievance or lawsuit that resulted in a retaliatory action by West in 2023 or 2024 or by the Parole Board at any other time. Nevertheless, "West does not contest that [Patterson] engaged in protected First Amendment activity by accessing the courts; nor does Defendant contest that [Patterson] has a right to be free from retaliation for filing lawsuits or grievances." (ECF No. 57, at 9 (citation omitted).) Moreover, "West also does not dispute that actual retaliatory parole denial would likely deter a person of ordinary firmness from exercising his First Amendment rights." (*Id.* (citation omitted.)) Therefore, West concedes that Patterson satisfies the first two factors in the retaliation analysis. However, Patterson's retaliation claim falters under the third factor because he fails to demonstrate a causal connection between the protected First Amendment activity and the alleged adverse actions. *See Constantine*, 411 F.3d at 500–01.

To demonstrate unlawful retaliation, Patterson must put forth "more than naked allegations of reprisal . . . ." *Adams*, 40 F.3d at 74. As West correctly asserts, Patterson offers nothing more

14

than mere allegations and speculation that West retaliated against him due to filing grievances and lawsuits.[8] Patterson suggests that there are "documented statements of Plaintiff being a 'jailhouse lawyer,'" but points no admissible evidence that these statements exist within the Parole Board's records or that such a statement had any bearing on the decisions to deny him parole.

The uncontroverted evidence demonstrates that the Parole Board has no unofficial policy to deny him parole and there is no classification of Patterson as a "jailhouse lawyer" in its files. (*See* ECF No. 57-1 ¶ 31.) West has neither given nor received a directive to deny Patterson parole. (*Id.* ¶ 32.) The Parole Board is a separate entity from the VDOC where Patterson filed his grievances, and the Parole Board and West are not aware of the grievances that he filed in the VDOC or any lawsuits Patterson may have filed against the VDOC. (*Id.* ¶ 30.) Patterson puts forth no evidence that he made the Parole Board or West aware that he was filing grievances or lawsuits or any evidence that would suggest that West knew that he had filed them. *See Constantine*, 411 F.3d at 501 (explaining that "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [his or] her engaging in protected activity.") Patterson also points to no direct evidence of a retaliatory motive.[9]

---

[8] For example, Patterson alleges that in 1990 he was told by a parole officer "that winning litigation . . . would cause Plaintiff to be watched, and if he violated parole, he would not stand a chance at being paroled." (ECF No. 59, at 3.) Not only is this statement hearsay, but it is not a statement made by West or the Parole Board and has no bearing on any decision to grant or deny him parole. Patterson also contends that in 2017, he was told by the Executive Secretary of the Parole Board that he "had very little chance of winning a parole grant, due to his continuing litigations and the violent offense he was convicted of." (*Id.* at 3–4.) While this statement is again inadmissible hearsay, nevertheless, it supports the conclusion that Patterson was denied parole for a legitimate reason: the nature of his criminal offenses. Additionally, these statements are not in temporal proximity to the denials of parole in 2023 and 2024. *See Constantine*, 411 F.3d at 501.

[9] Patterson continues to argue that individuals with worse records have been released on parole and argues this establishes retaliation as the only reason that he was denied parole. As West correctly observes, this is not a reasonable inference based on the record and is merely an unsupported conclusion drawn by Patterson. (*See* ECF No. 57, at 10.)

15

Moreover, Patterson fails to show that his protected activity of filing grievances or lawsuits was 'a substantial or motivating factor' in [the Parole Board's] action" in denying him parole. *Shaw*, 59 F.4th at 130 (citation omitted). To the contrary, the record reflects that Patterson was denied parole for obvious, legitimate reasons, including: the horrific nature of his criminal offenses; the need for Patterson to serve more of his sentence; that release would diminish the serious nature of his crimes; his extensive criminal record; his prior failure and new convictions while on parole demonstrated that he was unlikely to comply with conditions of release; his history of violence; and poor institutional adjustment. (ECF No. 57-1, at 66–69.) In considering Patterson for discretionary parole, the Parole Board was required to take into account the nature of his offenses, with his 1980 offenses being sexual assault, rape, and abduction, and his 1991 offenses being rape, two counts of sodomy, and robbery. (ECF No. 57-1 ¶ 28.) Patterson also violated his parole and committed new criminal offenses both times he was released on parole. (*Id.*) The Parole Board determined that Patterson's release on parole was not compatible with interests of society. (*Id.*)

In sum, no reasonable juror would find that Patterson's filing of grievances in the VDOC or various lawsuits through the years or his alleged classification as a "jailhouse lawyer" were a "substantial and or motivating factor" for the denial of discretionary parole. *Cf. Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993) (requiring plaintiff to show that proffered reasons were pretextual and to "carry his initial burden of proving that [engaging in the protected First Amendment activity was] a substantial factor" in the adverse action"). Rather, any juror would conclude that Patterson was denied parole for obvious, legitimate reasons. Patterson has failed to

16

satisfy his burden of showing a prima facie case of retaliation.[10] Accordingly, Claim Two will be DISMISSED for lack of merit and as frivolous.

## V. MOTION FOR EMERGENCY T.R.O.

Patterson has filed a Motion for Emergency T.R.O./Injunctive Relief ("TRO," ECF No. 60) in this action. Patterson complains about his treatment within the Virginia Department of Corrections and asks the Court to order him to receive the "correct legal process for [his] October 3rd, 2025 Virginia state parole review," receive appropriate medical care, and to "prohibit unwarranted harassment by prison staff." (*Id.* at 1–2.) A TRO or preliminary injunction is not appropriate when the harm complained of does not arise from the harm in the complaint. *See Omega World Travel v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). Patterson must establish a nexus between the injury claimed in the motion and the conduct giving rise to the complaint. *See id.* (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). A TRO may not "issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Id.* The subject of Patterson's TRO is not the subject of the remaining claim against West in his complaint—that he has been denied parole by West due to retaliation. Moreover, Patterson's TRO mostly seeks to enjoin the Virginia Department of Corrections or some identified employee of the Virginia Department of Corrections. The Virginia Department of Corrections and its staff are not defendants in this action. Thus, the TRO is unrelated to the complaint. Although Patterson is convinced that he has been subjected to some broad, ongoing retaliation by Virginia Department of Corrections staff for exercising his First

---

[10] Even if Patterson had met this burden, West clearly shows by the "preponderance of the evidence that [the Parole Board] would have taken the same action in the absence of the plaintiff's protected activity." *Shaw*, 59 F.4th at 130 (citation omitted). Indeed, the denials provided a multitude of legitimate reasons for why Patterson was being denied parole.

17

Amendment right to grieve and file lawsuits, that is unrelated to the remaining claim that he has been consistently denied parole. Moreover, the Court has already found this unsubstantiated retaliation was not a substantial or motivating factor in the decision to deny him parole. Thus, in any event, Patterson is not entitled to any relief. Accordingly, the TRO, (ECF No. 60), will be DENIED.

If Patterson wishes to pursue the allegations in the TRO, he should file a complaint with an accompanying TRO. The Court will process any such complaint and TRO as a new civil action.

## V.   CONCLUSION

Defendant West's motion for summary judgment, (ECF No. 56), will be GRANTED. Patterson's remaining claim against West will be DISMISSED for lack of merit and as frivolous. The TRO, (ECF No. 60), will be DENIED. The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 1 December 2025
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge